UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH WAYNE SCHMIDT, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-08-cv-01696 |
| THE STATE OF TEXAS, et al., | § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court is the Motion to Dismiss of Defendants State of Texas and Texas Department of Public Safety ("DPS"). (Doc. No. 22.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court concludes that Defendants' Motion to Dismiss should be granted.

### I. BACKGROUND

This case arises out of a traffic stop that occurred in Conroe, Texas, on May 22, 2006.[1] Plaintiff Keith Wayne Schmidt was stopped by Defendant Eric Gray, a Texas state trooper, because his license plate was not visible. (Pl. Compl. ¶ 16.) Plaintiff suffers from a number of illnesses and disabilities, including chronic obstructive pulmonary disease, chronic bronchitis, peripheral neuropathy, and HIV/AIDS. (Pl. Compl. ¶ 8.) Plaintiff is disabled as defined by the Social Security Administration. (*Id.*)

Defendant Gray asked Plaintiff to exit the car and then asked if Plaintiff had been drinking. Plaintiff denied that he had been drinking. Defendant Gray then asked Plaintiff to

---
[1] The facts are either undisputed or, for the purposes of this Motion only, presented as pled in Plaintiff's Complaint.

1

perform a Breathalyzer test, but Plaintiff refused, telling Defendant Gray that he could not perform the test because of his medical condition. Plaintiff told Defendant Gray that he might be able to perform the test if he were allowed to retrieve his inhaler from the front seat of the car, but Defendant Gray prevented him from doing so.

Defendant Gray then asked Plaintiff to perform a series of field sobriety tests. Plaintiff agreed, but he informed Defendant Gray that his legs were still weak from radiation treatments. The dash camera on Defendant Gray's patrol car recorded Plaintiff performing these tests. Defendant Gray then arrested Plaintiff and put him in the front seat of the patrol car. While hand-cuffed, Plaintiff had difficulty breathing and spit mucus into an empty paper cup in the car. When Defendant Gray returned, Plaintiff informed him that he had spit in the cup, and Defendant Gray removed Plaintiff from the patrol car. He walked Plaintiff to the rear of the car, where he slammed the lid of the car's trunk on Plaintiff's fingers.

Defendant Gray then called the Montgomery County Sheriff's Deputy Office. After approximately thirty minutes, Defendant EMS arrived at the scene and examined Plaintiff. Defendant Gray told the Sheriff's Department to transport Plaintiff to the hospital because he did not want Plaintiff in his patrol car. Plaintiff asked to retrieve his medical bag from his vehicle, but Defendant Gray refused. The Sheriff's Deputy insisted that Plaintiff be allowed his nitro sat 1/150 medication. Plaintiff was taken to the Sheriff's Department where he was charged with driving while intoxicated. Plaintiff had more difficulty breathing at the Sheriff's Department and received medical treatment. Plaintiff then posted bond.

On October 3, 2006, the Montgomery County District Attorney's Office moved to dismiss the Driving While Intoxicated ("DWI") charges against Plaintiff. The state court granted the motion on October 6, 2006. On the same day, Plaintiff appeared at the Administrative

2

License Revocation ("ALR") hearing to appeal the suspension of his license. The ALR suspended Plaintiff's driver's license. Plaintiff appealed this decision; it was affirmed on October 9, 2007.

Plaintiff filed suit against the State of Texas, the Texas Department of Public Safety, the EMS Division of Montgomery County Hospital, and Officer Eric Gray. Plaintiff brings claims pursuant to the American with Disabilities Act ("ADA") and 42 U.S.C. § 1983.

## II.  ANALYSIS

### A. 12(b)(1) Standard

The court must dismiss a case when the plaintiff fails to establish subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

### B. Defendants' Sovereign Immunity

The principle of sovereign immunity, enshrined in the Eleventh Amendment, bars citizens from suing a non-consenting state in federal court. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). If a defendant is protected by sovereign immunity, federal courts lack subject matter jurisdiction over the suit. *Warnock v. Pecos*, 88 F.3d 341, 343 (5th Cir. 1996). State agencies are typically considered arms of the state and thus entitled to

3

sovereign immunity.[2] *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 557 (5th Cir. 1982), *cert. denied*, 488 U.S. 849 (1988)). Congress may abrogate the states' Eleventh Amendment immunity from particular claims when it both unequivocally intends to do so and "acts pursuant to a valid grant of constitutional authority." *Garrett*, 531 U.S. at 363 (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)).

### C. Section 1983 Claims

Congress has not abrogated the sovereign immunity of the states as to claims brought pursuant to 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 342 (1979). As such, this Court does not have subject matter jurisdiction over Plaintiff's § 1983 claims against Defendants State of Texas and Texas Department of Public Safety.

### D. ADA Claim

Plaintiff also alleges that Defendants violated the ADA. The ADA provides that "[a] state shall not be immune under the Eleventh Amendment to the Constitution of the United States from an action in [a] Federal or state court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has invalidated Congress's attempt to abrogate state sovereign immunity under the ADA as unconstitutional. *Garrett*, 531 U.S. at 363-

---

[2] The Texas Tort Claims Act ("TTCA") waives Defendant DPS's sovereign immunity in limited circumstances. TEX. CIV. PRAC. & REM. CODE § 101.025. The TTCA provides that the state's governmental units are liable "for personal injury and death so caused by a condition or use of tangible personal property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Texas Department of Public Safety v. Rivera*, No. 13-01-293-CV, 2002 WL 720706 at *3 (Tex. App.- Corpus Christi 2002) (citing TEX. CIV. PRAC. & REM. CODE § 101.021(2)). Defendant Texas Department of Public Safety is a governmental unit and subject to suit under the narrow terms of the TTCA. *See Texas Department of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001); To avoid dismissal for lack of subject matter jurisdiction, a plaintiff must fully comply with all the provisions of the TTCA. *Rivera*, No. 13-01-293-CV, 2002 WL 720706 at *3.
 The TTCA requires, among other things, that an action against a governmental unit be brought in the state court in the county in which the cause of action arises. TEX. CIV. PRAC. & REM. CODE § 101.102. Additionally, the plaintiff must give the governmental unit notice of the claim against it no later than six months after the incident giving rise to the claim occurs, unless the governmental unit has actual notice of the claim. *Id.* at § 101.101. Plaintiff filed this action in federal court, and the Complaint does not allege that he attempted to notify Defendant DPS of his claim or that Defendant DPS had actual notice of his claim. It follows that the Court cannot apply the TTCA.

364. The Court recently refined its position, however, holding that insofar as Title II creates a private cause of action against states for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity. *Georgia v. Goodman*, 546 U.S. 151, 159 (2006). To determine whether the Court has jurisdiction over Plaintiff's ADA claims, therefore, it must ascertain (1) which aspects of the State's alleged conduct violated Title II and (2) to what extent such misconduct also violated the Fourteenth Amendment. *Id.*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (citing 42 U.S.C. § 12132). A public entity is defined as "any department, agency, special purpose district, or any other instrumentality of a State or States or local government." *Hainze* (citing 42 U.S.C. § 121313(1)(B)).

Plaintiff Schmidt alleges in his Complaint that he qualifies as "disabled" under U.S.C. §§ 12102, 12111, 12131. (Pl. Compl. ¶ 8.) He claims to suffer from chronic pulmonary disease and HIV/AIDS, and he is classified as disabled by the Social Security Administration. Defendants, in their briefing, cite case law suggesting that HIV/AIDS does not qualify as a per se disability under the ADA; however, they do not specifically dispute Plaintiff's claim that he is disabled. The Court therefore assumes, based on the facts presented in Plaintiff's Complaint, that Plaintiff is a qualified individual under the ADA. The parties do not dispute that Defendants State of Texas and DPS are "public entities" as defined by the statute.

"A disabled plaintiff can succeed in an action under Title II if he can show that, by reason of his disability, he was either "excluded from participation in or denied the benefits of the

services, programs, or activities of a public entity" or was otherwise "subjected to discrimination by any such entity." *Hainze*, 207 F.3d at 799 (citing 42 U.S.C. § 12132). Plaintiff contends that Defendant State of Texas violated the ADA by "failing to provide alternative methods and procedures, rule and laws which provide for, AND REQUIRE alternative methods of testing for intoxication and all other field sobriety tests for Americans with disabilities." (Pl. Compl. ¶ 10.) He alleges that Defendant DPS similarly violated the ADA by "fail[ing] to provide for procedures and training for its officers, when dealing with Americans with disabilities [and] by refusing to provide its officers ... with alternative methods of procedures when confronted and dealing with persons with disabilities." (Pl. Compl. ¶ 11.) Plaintiff suggests, in his briefing, that Defendant DPS should accommodate individuals with pulmonary disease who are subject to DWI stops by allowing them to take a blood test, instead of forcing them to use a breathalyzer.

The Fifth Circuit has held that Title II does not apply to an officer's on-the-street-response to a reported disturbance or other similar incidents, whether or not the call involves subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life. *Hainze*, 207 F.3d at 801. In *Hainze*, the plaintiff, who had a long history of depression, called a relative and told her that he intended to commit "suicide or suicide by cop." The relative called the local sheriff's department, who responded to the scene. When the deputies arrived, the plaintiff was holding a knife and standing beside a pick-up truck occupied by two unknown individuals. The deputies ordered him to step away from truck, and the plaintiff started walking toward the deputies, yelling profanities. The deputies twice ordered the plaintiff to stop, but he ignored them. When the plaintiff was four to six feet away, a deputy shot him twice in the chest. The plaintiff survived, and sued the county under the ADA, claiming that the "county's policy of treating mental health calls identical to criminal response

6

calls and those not involving people with mental disabilities resulted in his discriminatory treatment." *Id.* at 801.

> In rejecting the plaintiff's claim, the Court of Appeals observed that:
>
> Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents.

*Id.* The Fifth Circuit concluded that, once the area has been secured and there is no threat to human safety, public entities then have a duty to reasonably accommodate an arrestee's disability in handling and transporting him. *Id.* at 802.

The Eleventh Circuit recently discussed the *Hainze* rule in the context of an officer's DWI investigation. In *Bircoll v. Miami-Dade County*, 480 F.3d 1072 (11th Cir. 2007), the plaintiff, who was deaf, was pulled over on supicion of drunk driving. The officer who stopped him attempted to administer the standard field sobriety test. The plaintiff requested that the officer call for an interpreter to help the plaintiff throughout the test, but the officer refused and later arrested the plaintiff for drunk driving. The plaintiff sued Miami-Dade County, arguing, among other things, that the country discriminated against him on the basis of his disability when it administered field sobriety test on the roadside. He claimed that he was entitled to effective communication with the police throughout his arrest, and that the police failed to make reasonable modifications to their procedures to ensure effective communication. He argued that, under the ADA, the county was required to provide auxiliary aids, such as an oral interpreter, for effective communication during the field sobriety tests.

The Eleventh Circuit discussed *Hainze*, but it rejected the plaintiff's claim on slightly different reasoning, holding that the plaintiff's requested modification was not reasonable.

*Bircoll*, 480 F.3d at 1085. Given the criminal activity and safety concerns of DWI investigations, the Court of Appeals held that it is unreasonable to require police to modify procedures before they physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety. *Id.* at 1085. The Eleventh Circuit commented that "[f]orestalling all police activity at a roadside [DWI] stop until an oral interpreter arrives is not only impractical but also would jeopardize the police's ability to act in time to obtain an accurate measure of the driver's inebriation." *Id.* at 1086.

Plaintiff's Title II claim fails because, under the *Hainze* rule, Defendant DPS is not required to accommodate his disability during a DWI investigation. DWI stops are the type of pre-arrest investigation that the Fifth Circuit envisioned when it articulated the rule: officers are required to determine, in a matter of moments, whether they should allow a suspect to continue driving or make an arrest. Furthermore, Plaintiff's proposed modification, that individuals with pulmonary disease be allowed a blood test instead of using a breathalyzer, would be even more discriminatory, as police would actually have to arrest the suspect and take him to the police station to determine his sobriety. *See, e.g., Bircoll*, 480 F.3d at 1086. The Court finds that Plaintiff fails to present a valid Title II claim; it is therefore not necessary to determine whether Defendants allegedly violated Plaintiff's Fourteenth Amendment rights.

### III. CONCLUSION

Defendants' State of Texas and Texas Department of Public Safety Motion to Dismiss is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the ___12th___ day of January, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**