UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEITH WAYNE SCHMIDT, | § | |
| | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | CIVIL ACTION NO. H-08-cv-01696 |
| | § | |
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Before the Court are the Motions for Summary Judgment of Defendants Eric Gray (Doc. No. 52) and Montgomery County Hospital District—EMS Division ("EMS") (Doc. No. 53). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that EMS's Motion should be granted and Gray's Motion should be granted in part and denied in part.

## I.    BACKGROUND

This case arises out of a traffic stop that occurred in Conroe, Texas, on May 22, 2006.[1] Plaintiff Keith Wayne Schmidt was stopped by Gray, a Texas state trooper, because his license plate was not visible.  (Pl. Compl. ¶ 16.)  Plaintiff suffers from a number of illnesses and disabilities, including chronic obstructive pulmonary disease, chronic bronchitis, peripheral neuropathy, and HIV/AIDS.  (*Id.* at ¶ 8.)  Plaintiff is disabled as defined by the Social Security Administration.  (*Id.*)

---

[1] The facts are either undisputed or, for the purposes of this Motion only, presented in the light most favorable to Plaintiff.

Gray believed that he smelled alcohol, so he asked Plaintiff to exit the car and then asked if Plaintiff had been drinking.   Plaintiff denied that he had been drinking.  (Pl. Compl. ¶ 16; Gray Aff. ¶ 3.)  Gray then performed a number of sobriety tests, including the Horizontal Gaze Nystagmus ("HGN") test of eye movement, walk and turn, alphabet recitation, and the Preliminary Breath Test ("PBT").  (Gray Aff. ¶ 3.)  When Gray asked Plaintiff to say the alphabet, he counted to ten, and Plaintiff did not follow directions on the walk and turn test.  (*Id.*) Gray did not ask Plaintiff to perform the "one-leg stand" because Plaintiff said his legs were swollen.  (*Id.*)  Plaintiff performed the PBT without objection, and without any coughing or signs of breathing difficulty.  (*Id.*)  The PBT indicated that Plaintiff was "over the legal limit" for intoxication.  (Doc. No. 52, Ex. 3 at 3 ¶ 24.)  Gray concluded that Plaintiff was intoxicated and placed him under arrest for Driving While Intoxicated ("DWI").  (Gray Aff. ¶ 3.)   Gray handcuffed Plaintiff and placed him in the front passenger seat of the patrol car.  (*Id.*)

Plaintiff then informed Gray that he wanted his medications and his wallet from the front seat of his car.  (*Id.*)  Gray asked Plaintiff which illnesses he had, and Plaintiff replied that he had AIDS, heart trouble, and "everything."  (*Id.*)   Gray told Plaintiff that he would be given medication at the jail, but he asked Plaintiff if he had Nitro.  Plaintiff responded that he did, and Gray returned to Plaintiff's car to search for Plaintiff's Nitro medication.  (*Id.*)  During this time, Plaintiff remained in the patrol car.  (*Id.* at ¶ 4.)  While hand-cuffed, Plaintiff had difficulty breathing and spit mucus into an empty paper cup in the car.  (Pl. Compl. ¶ 16.)  When Defendant Gray returned, Plaintiff informed him that he had spit in the cup, and Defendant Gray removed Plaintiff from the patrol car.  (*Id.*)  Gray became "upset" because he felt that Plaintiff had endangered him by spitting bodily fluids in the cup.  Gray was worried that Plaintiff would

spit on him and infect him with a contagious disease, so he called for a sheriff's deputy car, which has a protective divider, to transport Plaintiff to the jail. (Gray Aff. ¶ 4.)

While waiting for the sheriff's deputy to arrive, Gray walked Plaintiff to the rear of the patrol car. (Pl. Compl. ¶ 16.) The patrol car's trunk lid was open because Gray used it to store paper work and equipment. (Gray Aff. ¶ 5.) At some point, Gray closed the trunk lid on Plaintiff's thumb. (Pl. Compl. ¶ 16.) Plaintiff alleges that Gray intentionally slammed his finger in the trunk because he was angry after Plaintiff spit in his cup. (Schmidt Dep. 145:17-19.) Gray claims that he had not noticed Plaintiff's fingers near the trunk. (Gray Aff. ¶ 5.) After Plaintiff yelled in pain, Gray blurted out an expletive. (*Id.*)

Gray then called EMS, even though Plaintiff indicated that Gray did not need to call it. (Doc. No.52, Ex. B; Schmidt Dep. 117:6-12.) An EMS ambulance responded to Gray's call on a non-emergency basis. (Edwards Aff. ¶ 3.) The ambulance crew was composed of three EMS medics: Wayne Bedair, David Overstreet, and Jason Edwards. (*Id.*) Edwards took "the lead role" during the call, communicating with Gray and examining Plaintiff's thumb. (*Id.* at ¶¶ 4-5.) The three medics had never met Gray before the call, and none of the medics has had any communication or contact with Gray other than the conversation captured on the patrol car's dash camera. (Edwards Aff. ¶¶ 7-8; Bedair Aff. ¶¶ 6-7; Overstreet Aff. ¶¶ 6-7; Gray Aff. ¶ 10.) Specifically, other than the conversation on the dash camera, none of the medics has ever had any communication with Gray about Plaintiff, Plaintiff's arrest and the EMS response, or how the EMS response would be documented. (*Id.*) The medics and Gray all aver that they never, at any time, agreed to conceal or "cover up" the fact that Gray slammed his trunk lid on Plaintiff's thumb, or any other aspect of Plaintiff's arrest or the EMS response. (*Id.*)

The medics examined Plaintiff's thumb and informed Gray that it did not appear to be broken. (Gray Aff. ¶ 7.) Following the EMS response, Edwards prepared an EMS non-transport report. (Edwards Aff. ¶ 9.; Doc. No. 53, Ex. 2.) The report narrative states: "nb main, TRUNK LID TO FINGER, MEET DPS ON SCENE, NORTH OF RAYFORD (225W)" and "arrived to find individual who was nicked with trunk lid to thumb as trunk lid was being shut. Individual has [sic] no visible injuries and does not desire EMS intervention." (Doc. No. 53, Ex. 2.) Edwards's report did not name either Plaintiff or Gray. (*Id.*)

The sheriff's deputy transported Plaintiff to the jail, where Gray charged him with DWI. (Gray Aff. ¶ 7.) Since it was Plaintiff's third DWI, Gray charged him with a felony. (*Id.*) Gray completed both an offense report and an incident report describing his apprehension of Plaintiff. (Doc. No. 52, Exs. C-D.)

On October 3, 2006, the Montgomery County District Attorney's Office moved to dismiss the DWI charge against Plaintiff. The state court granted the motion on October 6, 2006. (Pl. Compl.) On the same day, Plaintiff appeared at the Administrative License Revocation ("ALR") hearing to appeal the suspension of his license. The ALR suspended Plaintiff's driver's license. (*Id.*) Plaintiff appealed this decision; it was affirmed on October 9, 2007. (*Id.*)

Plaintiff filed suit against the State of Texas, the Texas Department of Public Safety ("DPS"), EMS, and Gray. In an earlier order, the Court dismissed Plaintiff's claims against the State of Texas and DPS. (Doc. No. 37.) Plaintiff brings claims pursuant to the American with Disabilities Act ("ADA") and 42 U.S.C. § 1983.[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II.   ANALYSIS

---

[2] The Court notes that Plaintiff has requested that the Court appoint counsel to represent him in this matter. Unfortunately, the Court has no resources to do so in the civil context.

## A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## B. Plaintiff's Motions to Strike

In his response, Plaintiff objects to several pieces of evidence relied on by Defendants. The Court will treat these objections as motions to strike.

### 1. Affidavits

Plaintiff objects to Defendants' use of affidavits, arguing that it is "unbelievable that Defendant has come up with and produced evidence after three years of litigation." (Pl. Resp. ¶

27(a).)  Plaintiff then objects to Gray's production of the incident report and his supervisor's report and accuses the Attorney General of fraudulent behavior.  Plaintiff argues that the Attorney General represented Defendants in the underlying state criminal litigation related to Plaintiff's DWI charge, and that Defendants refused to provide discoverable evidence in that proceeding.  Defendants reply that Rule 56 allows the use of affidavits and that the incident report has been properly authenticated.  (Doc. No. 52, Ex. A.) The Court agrees that the documents have been properly produced and authenticated in this lawsuit.

### 2.  Deposition Excerpts

Plaintiff contends that the excerpts of his deposition should be struck because they are not properly authenticated and because, at the deposition, Plaintiff was "heavily medicated." Defendants have provided the executed sworn reporter's certificate with the excerpts, and Plaintiff assured Defendants at the outset of the deposition that his medication would not affect his memory.  (Schmidt Dep. 8:18-25.)

### 3.  Requests for Admissions

Plaintiff next argues that Defendant relies on its own requests for admissions, served on Plaintiff, and asserts that a party cannot rely on its own admissions.  He argues that, even though Defendants have attempted to state that he failed to answer their admissions, he did answer them and forward them to the Attorney General.  The Court has reviewed the record and cannot locate Plaintiff's admissions.  As it does not rely on his admissions in resolving the merits of Plaintiff's claims, the Court will consider this issue moot.

### 4.  Other Discovery

Next, Plaintiff argues that the video of the incident was not properly authenticated and constitutes hearsay.  Plaintiff then argues that the video shows that Gray denied Plaintiff his

medication, and that the audio portion of the video proves that Plaintiff was injured and that Gray used an expletive after slamming the trunk on Plaintiff's finger.  As EMS argues, however, the video was authenticated by both Gray and Plaintiff when they identified it as a true and accurate depiction of the events of the evening.  (Schmidt. Dep. 165-166; Doc. No. 52, Ex. A.) Plaintiff has not identified the statements in the video that constitute hearsay; rather, he contends certain audio portions of the video support his claim.  The Court will not strike the video.

### 5.  Expert witness

Finally, Plaintiff objects to Defendants' use of Sgt. Kenneth Hiebert's expert testimony regarding the reasonableness of Gray's actions. (Doc. No. 52, Ex. H.)  Plaintiff argues that Hiebert cannot testify about Plaintiff's need for medication or the jail's ability to satisfy Plaintiff's medical needs.  Plaintiff further contends that Hiebert could not have been knowledgeable about whether Plaintiff was taken to the infirmary two weeks after the incident or that another inmate notified the jail of Plaintiff's condition.  Defendants are not offering Hiebert's testimony on these subjects; rather, he gives his opinion as to whether Gray's actions were reasonable and comported with the Texas Commission on Law Enforcement Officers Standards and Education ("TCLEOSE") standards.  Plaintiff has not challenged Hiebert's qualifications on those grounds; therefore, the Court will not strike Hiebert's affidavit.

### C.  Plaintiff's Claims Against EMS

Plaintiff alleges that EMS violated his rights when it conspired with Gray by failing to file a written report of Plaintiff's injury.  Specifically, Plaintiff argues that EMS failed to file a detailed written report of the incident and omitted both Plaintiff's and Gray's name from the report.  EMS moves for summary judgment, arguing that, under either 42 U.S.C. § 1983 or 42

U.S.C. § 1985,[3] Schmidt's pleadings are insufficient to support a conspiracy claim against EMS and that the evidence conclusively negates the existence of the requisite "agreement or understanding" among alleged conspirators.

To establish conspiracy under 42 U.S.C. § 1983, "a plaintiff must show that the defendants agreed to commit an illegal act" and "mere conclusory allegations of conspiracy cannot, absent reference to material facts" constitute grounds for § 1983 relief. *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990) (quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)). In the instant case, Plaintiff's pleading does not support a civil rights conspiracy claim because he has not alleged that the EMS workers agreed with Gray to commit an illegal act. Further, the evidence, including the videotaped interaction between Gray and the EMS workers, does not indicate that Defendants conspired to commit an illegal act.

To establish a claim of conspiracy under § 1985, a plaintiff must allege that (1) the defendants conspired (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States, and (5) the action of the conspirators is motivated by racial animus. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001). As EMS notes, the Fifth Circuit requires that plaintiffs alleging § 1985 claims specifically allege a race-based conspiracy. *Bryan v. City of Madison, Miss.*, 213 F.3d

---

[3] EMS states that it is unclear whether Plaintiff is asserting his conspiracy claim pursuant to 42 U.S.C. § 1985 or § 1983. In his Complaint, Plaintiff mentions the conspiracy claim under the sub-heading "Civil Rights Act, 42 U.S.C. § 1983." (Pl. Compl. ¶ 15.) Under the sub-heading "Jurisdiction" Plaintiff states that the Court's jurisdiction is based, in part, on "a [c]onspiracy to violate and/or cover-up the violation of the Plaintiff's rights including, but not limited to, the Fifth, Eighth, and Fourteenth Amendment to the United States Constitution, under Title 42 U.S.C., Chapter 21, Section 1985(3). (Pls. Compl. ¶ 5.) The Court will therefore consider the merits of Plaintiff's conspiracy claim under both sections.

267, 276 (5th Cir. 2000). Plaintiff has failed, in both his Complaint and his Response, either to plead or present evidence that EMS's alleged conspiracy, either with Gray or among the medics themselves, was motivated by race. His § 1985 claim therefore cannot survive summary judgment.

In his Response, Plaintiff first argues that Defendants have not moved for summary judgment on his ADA claim. Plaintiff did not allege in his Complaint, however, that EMS had violated his rights under the ADA.[4] *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) ("[A] claim that is not raised in the Complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Plaintiff further speculates that the three EMS medics conspired among themselves when they failed to file a completed report, that this was a violation of policy, and that two of the workers were fired and one was reprimanded for their failure to file a completed report.[5]

As discussed above, this speculation is not sufficient to support a claim for conspiracy under § 1983 or § 1985. Additionally, as EMS notes in its Reply, an alleged conspiracy among the three medics fails as a matter of law because a conspiracy requires a meeting of the minds between "two or more persons," and it is undisputed that each medic was an EMS employee. (Schmidt Dep. 195:15-23.) "[W]here all of the defendants are members of the same collective entity, the conspiracy does not involve two or more people." *Reynosa v. Wood*, 134 F.3d 369, 1997 WL 811828, at *2 (5th Cir. 1997) (not designated for publication) (collecting cases). The Court therefore finds that Plaintiff's claims against EMS have failed as a matter of law.

---

[4] Plaintiff's Response also does not explain how EMS violated his rights pursuant to the ADA. Plaintiff does allege that he was "denied the services, programs and activities when Defendant DPS dispatch failed to file a report after making a 911 call 'for Defendant Gray', to have the EMS dispatched to the scene after the Plaintiff was injured by Defendant Gray." (Pl. Resp. ¶ 16.) These allegations are aimed at DPS, however, which the Court has already dismissed from the suit.

[5] EMS denies in its Reply that any firings or reprimands resulted from the EMS involvement in Plaintiff's traffic stop. It alleges that two of the medics are still employed by EMS and one medic left amicably for reasons unrelated to this case.

### D. Plaintiff's Claims Against Trooper Gray

#### 1. Americans with Disabilities Act

In his Complaint, Plaintiff first argues that Defendant Gray violated the Americans with Disabilities Act ("ADA") by intentionally discriminating against Plaintiff because of his disability. Plaintiff argues that Gray's discriminatory acts include refusing to allow Plaintiff to transport the medication in his car with him to the jail and refusing to allow an alternative method of testing which did not require Plaintiff to use his pulmonary functions. (Pl. Compl. ¶ 9.) Further, Plaintiff contends that Gray refused to let Plaintiff take his medication after his arrest, slammed the patrol car trunk on Plaintiff's finger, and required Plaintiff to perform tests that were medically impossible. (*Id.*) Further, Plaintiff alleges that he refused to provide a breath specimen and was not allowed to provide a blood specimen. (*Id.*)

The Court has already dismissed Plaintiff's ADA claims against DPS and the State of Texas. (Doc. No. 37.) Insofar as Plaintiff is suing Gray in his official capacity, his ADA claims would be barred. Further, to the extent Plaintiff is suing Gray in his individual capacity, individual defendants are not personally liable for violations of Title II of the ADA. *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001).

#### 2. 42 U.S.C. § 1983

Plaintiff further alleges a claim against Gray based on 42 U.S.C. § 1983. According to Plaintiff, Gray violated Plaintiff's rights by refusing to allow Plaintiff access to his medication, before, during, and after the arrest, by slamming the trunk lid on Plaintiff's finger, and by failing to include in his written report the injury suffered by Plaintiff when he slammed the trunk lid on Plaintiff's finger. (Pl. Compl. ¶ 12.) Gray asserts a qualified immunity defense.

Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). The statute reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. In order to state a cause of action under § 1983, a plaintiff must (1) allege a violation of rights secured by the constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d at 215.

Officials sued in their individual capacities are protected by qualified immunity unless the act violates a constitutional right clearly established at the time. *Sanchez v. Swyden*, 139 F.3d 464, 466-467 (5th Cir. 1998). "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 284 (5th Cir. 2002). To avoid summary judgment, a plaintiff also must present evidence to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law and facts available to them." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993), *cert. denied*, 511 U.S. 1019 (1994). To determine whether the plaintiff has overcome the presumption of qualified immunity, the court must first consider whether the plaintiff alleged a violation of a clearly established constitutional right. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987). Second, the court must consider whether the defendant's "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 537. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler*, 242 F.3d 307, 317 (5th Cir. 2001). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated" the plaintiff's asserted constitutional or federal statutory right. *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

### a) Denial of Medical Treatment

The Court must first consider whether Plaintiff has alleged a violation to a clearly established constitutional right to medical treatment.[6] Plaintiff claims that Gray violated his rights by refusing him medication, failing to inventory Plaintiff's medication, and failing to inform the jail of Plaintiff's illnesses, medication, or injury. Pre-trial detainees have a right to medical care and safety pursuant to the procedural and substantive due process guarantees of the Fourteenth Amendment. *Jacobs v. West Feliciana Sheriff's Department*, 228 F.3d 388, 393 (5th Cir. 2000). "It is well-settled in the law that 'a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights.'" *Id.*[7] Gray argues that Plaintiff did not plead that he acted with deliberate indifference to Plaintiff's medical needs; rather, Plaintiff averred that Gray "refused" Plaintiff access to his medication before, during, and

---

[6] In his deposition, Plaintiff stated that his claims against Gray were limited to 1) deprivation of medical treatment, 2) excessive use of force, and 3) conspiracy. (Schmidt Dep. 203:15-205:23.)
[7] A different standard of care controls in conditions of confinement cases. *Hare v. City of Cornith, Miss.*, 74 F.3d 633, 644-645 (5th Cir. 1996) (*Hare* I).

after his arrest.  (Pl. Compl. ¶ 12.)  In Plaintiff's Response, he does not directly address this

argument.  The Court does not believe that Plaintiff's pleadings sufficiently allege Gray's

deliberate indifference; nevertheless, it will proceed to the second prong of the qualified

immunity defense, whether Gray's actions were objectively reasonable in light of the law which

was clearly established at the time of the disputed action.

In order to be liable for a violation of a detainee's clearly established constitutional right

to medical care, the official must have had subjective knowledge of a substantial risk of serious

harm to a pretrial detainee but responded with deliberate indifference to that risk.  *Id*. at 394

(citing *Hare v. City of Cornith*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc) ("*Hare* II")).  Thus,

the Fifth Circuit requires that defendants be held to a standard of subjective deliberate

indifference in determining whether their conduct was objectively reasonable.  *Id*. (citing *Hare v.

City of Cornith*, 135 F.3d 320, 327 (5th Cir. 1998) ("*Hare* III")).  The correct standard is not

whether the official "knew or should have known" but whether he had actual knowledge of the

substantial risk of serious harm and responded with deliberate indifference.  *Matis v. Joseph*,

Nos. 05-2615 and 06-0534, 2007 WL 183069, at * 3 (E.D.La. Jan. 17, 2007).  Immunity is

available even where the acts of the officials constitute gross negligence.  *Id*. (citing *Hare* II, 74

F.3d at 645).  "Deliberate indifference in the context of an episodic failure to provide reasonable

medical care to a pretrial detainee means that: 1) the official was aware of facts from which an

inference of substantial risk of serious harm could be drawn; 2) the official actually drew that

inference; and 3) the official's response indicates the official subjectively intended that harm

occur."  *Thompson*, 245 F.3d at 458-459 (5th Cir. 2001) (citing *Hare* I, 74 F.3d at 649-650).  The

determination of the objective reasonableness of a particular conduct in light of the subjective

deliberate indifference standard is a question of law for the court.  *Id*. (citations omitted).  The

Fifth Circuit has attempted to clarify this standard by explaining that "[the court] is to determine whether, in light of the facts as viewed in the light most favorable to the plaintiffs, the conduct of the individual defendants was objectively unreasonable when applied against the deliberate indifference standard." *Jacobs*, 288 F.3d at 395.

The evidence does not indicate that Gray was aware of a substantial risk that Plaintiff was exposed to serious medical harm. During their entire interaction, Gray did not perceive Plaintiff to be in any physical distress or need of medication. (Gray Aff. ¶ 9.)  Gray did not witness Plaintiff cough or have difficulty breathing while Plaintiff performed the PBT. (*Id.*)  Plaintiff admits that, prior to the PBT, he had not been coughing and he had not informed Gray that he had breathing problems. (Schmidt Dep. 94:17-25.) Plaintiff admits that, once he arrived at the jail, he was not having any trouble breathing and that he was "fine again." (Schmidt Dep. 131:15-20.)  Plaintiff had another episode of coughing after attempting to take the Breathalyzer test (*Id.* at 132:10-18), but did not have any other problems breathing until he had been at the jail for a few hours when he was outside of Gray's presence. (*Id.* at 141:11-14.)  He was then treated at the jail infirmary. (*Id.* at 141-142.)

Further, the evidence shows that Gray was not indifferent to Plaintiff's medical well-being. In fact, Gray seems to have accommodated Plaintiff's medical conditions even while conducting sobriety tests. Gray did not have Plaintiff perform the "one-legged stand" because Plaintiff told Gray that he had problems with his legs. (Gray Aff. ¶ 4.) When Plaintiff told Gray that he wanted his wallet and his medication from his vehicle, Gray explained that Plaintiff would be given medication at the jail. (*Id.*) Gray did inquire if Plaintiff took Nitro because Gray knew that "Nitro is a medication that is necessary to be carried at all times by a person with a heart condition." (*Id.*) Gray searched for Plaintiff's Nitro medication in Plaintiff's car, gave it to

Plaintiff, and sent it with Plaintiff to the jail. (*Id.*; Schmidt Dep. 103:4-14)  After closing the

trunk lid on Plaintiff's thumb, Gray requested that EMS come to the scene to examine Plaintiff's

thumb.  (*Id.* at ¶ 6.)  Gray informed EMS of Plaintiff's various illnesses.  (*Id.* at ¶ 9.)  The video

indicates that Plaintiff told Gray that he did not need to call EMS.  (Doc. No.52, Ex. B; Schmidt

Dep. 117:6-12.)  The medics advised Gray that Plaintiff's finger did not appear to be broken.

(*Id.* at ¶ 7.)  As Gray points out, Plaintiff could have requested treatment or medication from the

medics, but he did not.  (*Id.* at ¶ 9.)

Gray testifies via affidavit that DPS allows an officer discretion to determine whether to

send medication with a suspect to the jail.  (*Id.* at 9.)  Plaintiff had a lunch box size bag filled

with various medications, some of which were not in their original containers.  (*Id.*)  Gray

testifies that he believed the jail would not use a person's private medication but instead

administers medication that is kept in the jail.  (*Id.*)  It was also his understanding that the jail

would destroy medicine that was not in its original container.  (*Id.*)  As a result, Gray felt that

Plaintiff's medicine would be safer if it were left in his car, and that Plaintiff would be provided

any necessary medication in the jail.  (*Id.*)  He informed Plaintiff as much many times.  (*Id*;

Schmidt Dep. 104:1-4.)  Gray's report indicates that Plaintiff was evaluated by the jail's medical

staff.  (Doc. No. 52, Ex. D.)

These facts indicate that Gray sought to ensure that Plaintiff was not injured during the

sobriety test, that he had essential medications during transport to the jail, and that he received

medical attention after his thumb was injured.  At no time did Gray appear to believe that

Plaintiff faced a substantial risk of serious harm.  Considering the facts in the light most

favorable to Plaintiff, it is possible that Gray's alleged failure to inform the jail that Plaintiff

suffered from numerous diseases could be considered negligent.  Plaintiff alleges that he suffered

harm as a result:

> [A]nytime I go without my medications it doesn't do my body good not to have it when
> the viruses and everything are eating at me.  Secondly, I could have died with the
> bronchitis attack.  And if it hadn't been for the inmate notifying the guards that I was on
> the floor turning purple or red or whatever, then I probably would have.

(Schmdit Dep. 148:17-24.)  Plaintiff admits, however, that at the time he entered the jail, he was

"fine again" and that he did not have trouble breathing until he had been at the jail for a couple of

hours.  As a result, Gray could not have been aware that there was a "substantial and significant

risk" that Plaintiff would have breathing trouble while incarcerated.  Gray was not deliberately

indifferent to Plaintiff's medical well-being; therefore, he is entitled to a qualified immunity

defense.

### b) Excessive Force

Plaintiff also claims that Defendant Gray violated his constitutional rights when he

slammed the trunk lid of his patrol car on Plaintiff's thumbs.  Gray construes this as an excessive

force claim.  If a law enforcement officer uses excessive force in the course of making an arrest,

the Fourth Amendment guarantee against unreasonable seizure is implicated.  *King v. Chide*, 974

F.2d 653, 656 (5th Cir. 1992).  The Court's first inquiry, therefore, is whether Plaintiff has

alleged a violation of his Fourth Amendment right to be free from excessive force.  To establish

a Fourth Amendment excessive force claim, a plaintiff must show "(1) an injury (2) which

resulted directly and only from the use of force that was excessive to the need and (3) the force

used was objectively unreasonable."  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

"The injury must be more than a de minimis injury and must be evaluated in the context in which

the force was deployed."  *Id*. (citation omitted).

Plaintiff alleges that Gray intentionally slammed his finger in the trunk because he was angry after Plaintiff spit in his cup. (Schmidt Dep. 145:17-19.) Gray argues that it was an accident. Plaintiff alleges that he did not put his hands in the trunk; rather, Gray "leaned [him] up against the car." (Schmidt Dep. 161:12-15.) When the EMS medics examined Plaintiff's hands, they told him it did not appear that his right thumb was broken. (Schmidt Dep. 123:17-23; 116:21-23.) According to Plaintiff, the skin on his thumb was "just barely broke[n]" and the injury produced "not even a full drop" of blood, "like a paper cut or something." (Schmidt Dep. 116:17-20.) Two days after his arrest, Plaintiff had his personal physician examine his thumb. (*Id.* at 144:3-145:13.) The physician told Plaintiff that his thumb "seemed to be okay" and that he did not believe it was broken. (*Id.*) Plaintiff has not had any subsequent problems with his thumb. (*Id.*)

Gray, citing *Siglar v. Hightower*, argues that soreness and bruising are de minimis injuries that are insufficient to satisfy the injury element. 112 F.3d 191, 193 (5th Cir. 1997). In *Siglar*, a prisoner returning from breakfast was stopped by a prison guard who discovered that the prisoner was carrying a biscuit in his pocket, in violation of the prison's policy. The guard, without provocation, twisted the prisoner's arm behind his back and twisted his ear, which resulted in bruising and soreness that lasted about three days. The Fifth Circuit found that these injuries were de minimis.[8] Gray claims that, since Plaintiff also suffered no more than bruising and soreness, he has not provided sufficient evidence to establish an excessive force claim.

In *Williams v. Bramer*, a case decided two years after *Siglar*, the plaintiff alleged that the a police officer had used excessive force on two occasions—once when the officer was searching

---

[8] In *Siglar*, the plaintiff alleged a violation of the Eighth Amendment; however, a claim of excessive force by a law enforcement official is analyzed under the same standard regardless of whether it arises under the Fourth or Eighth Amendment. *Payne v. Parnell*, 246 Fed. Appx. 884 (5th Cir. 2007) (not designated for publication) (citing *Ikerd v. Blair*, 101 F.3d 430, 434 n.9 (5th Cir. 1996)).

the plaintiff's mouth for drugs, and then after the search was completed, when the officer choked the plaintiff. 180 F.3d 699 (5th Cir. 1999). The officer argued that he had never choked the plaintiff. The plaintiff's injuries from the two alleged incidents were the same—coughing, difficulty breathing, and temporary dizziness. The Fifth Circuit held that, in determining whether an injury caused by excessive force is more than de minimis, the court must consider the context in which the force was deployed. *Williams*, 180 F.3d at 703. "[T]he amount of injury necessary to satisfy our requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id*. at 703-704 (quoting *Ikerd*, 101 F.3d at 434). Earlier, in *Ikerd*, the Fifth Circuit explained that:

> [I]n the Fourth Amendment context, a certain amount of force is obviously reasonable when a police officer arrests a dangerous, fleeing suspect. *See Tennessee v. Garner*, 471 U.S. 1, 3 (1985). On the other hand, in the context of custodial interrogation, the use of nearly any amount of force may result in a constitutional violation when a suspect 'poses no threat to [the officers'] safety or that of others, and [the suspect] does not otherwise initiate action which would indicate to a reasonably prudent police officer that the use of force was is justified.' *Ware v. Reed*, 709 F.2d 345, 351 (5th Cir. 1983).

*Ikerd*, 101 F.3d at 434.

The Fifth Circuit determined that, in the context of the first alleged incident of excessive force, when the officer was searching the plaintiff's mouth, there was no cognizable injury. It concluded that "whenever a detainee is physically searched by an officer, a physical confrontation inevitably results." *Id*. at 704. The resulting injury alleged by the plaintiff did not rise to the level of a constitutional violation.

The Fifth Circuit then examined the second alleged incident of excessive force, the choking that occurred after the search had ended. In that context, it found that the same injuries were sufficient to assert a constitutional violation. Viewing the facts in the light most favorable

to the plaintiff, the Fifth Circuit noted that the second choking was motivated "entirely by malice." *Id.* "In this context, we hold that, although suffering from dizziness, loss of breath, and coughing are not significant injuries, combined, they qualify as a cognizable injury when the victim is maliciously assaulted by a police officer ...." *Id.* The plaintiff had thus established a genuine issue of material fact regarding whether he sustained an injury.[9]  In *United States v. Brugman*, 364 F.3d 613 (5th Cir. 2004), a border patrol officer willfully kicked and struck the victim at a time when the plaintiff was not trying to flee or resist the officer's authority.  The plaintiff suffered pain and loss of breath, felt pain for approximately three days, but suffered no visible manifestation of the injury.  Applying the *Williams* court's reasoning, the Fifth Circuit found that, given the context of the force used and the plaintiff's testimony regarding his injuries, the plaintiff satisfied the de minimis injury threshold. *Brugman*, 364 F.3d at 619.

More recently the Fifth Circuit discussed *Williams* in the unpublished opinion *Payne v. Parnell*, 246 Fed. Appx. 884 (5th Cir. 2007) (not designated for publication).  In that case, the plaintiff, an inmate who was working at his prison job in the prison yard when a guard approached the plaintiff and, without provocation, shocked him in the back with a cattle prod.  The plaintiff suffered "a painful reaction," causing him to "jump[] and holler[]."[10] *Payne*, 246 Fed. Appx. at 885. The shock left a mark on the plaintiff's back.  The officer argued that the plaintiff's injuries were de minimis, because they did not result in long-term damage requiring medical treatment.  Like Gray, the defendant cited *Siglar* to support his position.  The Fifth Circuit, however, concluded that the facts were more akin to *Williams* than *Siglar* because the shock from the cattle prod was at least as serious as a choking that causes temporary dizziness

---

[9] The Fifth Circuit later clarified its holding in Williams, noting that the officer's subjective intent was irrelevant to the Fourth Amendment inquiry.  Rather, the allegation that the officer acted with malice showed that the officer had "no apparent law enforcement related purpose" for the contact. *Williams v. Bramer*, 186 F.3d 633, 634 (5th Cir. 1999).
[10] *Payne* also involved an Eighth Amendment claim.

and loss of breath, and because there was no evidence that the plaintiff was violating a rule or that any force was necessary. *Id.* at 889.

Like the plaintiffs in *Williams*, *Brugman*, and *Payne*, at the time his thumb was injured, Plaintiff was not attempting to flee or resist Gray's authority. He was standing beside the patrol car, as Gray had ordered him to do. Taking all facts in the light most favorable to Plaintiff, if Gray did slam the trunk on Plaintiff's finger because Plaintiff spat in his cup, then Plaintiff's resulting injury was not de minimis. While Plaintiff's thumb was not permanently damaged, the Court believes that the pain resulting from having one's thumb slammed in a car's trunk could be at least as intense as the pain resulting from a kick or temporary chokehold, and possibly comparable to that caused by a cattle prod. The Court acknowledges Gray's claim that he closed the trunk on Plaintiff's fingers purely by accident. It is quite possible that, upon hearing Gray's version of events, a jury will find that no malice was involved and that Plaintiff's injuries do not support an excessive force claim. The Court cannot, however, substitute its judgment for that of the jury: any credibility determination between the officers' and the plaintiff's version of the events is inappropriate for summary judgment. *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 492 (5th Cir. 2001)).

The second element of the excessive force claims seems to be undisputed: Plaintiff's thumb was injured when it was slammed in the trunk. The third element asks whether the officer's use of force was objectively reasonable. The courts considers "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Guttirez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998). Plaintiff's crime, driving while intoxicated, was quite serious,

but not inherently violent.  As the Court has already discussed, at the time Gray closed the trunk on Plaintiff's thumb, Plaintiff did not pose a threat to the safety of the officers or others, and he was not attempting to evade arrest or flee.  Based on Plaintiff's version of events, the Court cannot conclude, as a matter of law, that slamming Plaintiff's finger in the trunk was not unreasonable.  *See Tarver*, 410 F.3d at 753 (holding that, when the plaintiff was accused of interfering with his daughter's custodial rights and alleged that police officers had maliciously slammed a car door on his foot and his head, there was a fact issue as to whether reasonable officers could disagree about the reasonableness of slamming the door, either intentionally or without first checking the position of the plaintiff's foot or head).

Finally, under the second step of the qualified immunity analysis, Plaintiff must demonstrate that Gray's conduct was unreasonable in light of clearly established law.  In May 2008, it was clearly established that Plaintiff had a right to be free from excessive force during an investigatory stop or arrest.  *Id.* at 754 (citing *Graham v. M.S. Connor, et al.*, 490 U.S. 386, 393-394 (1989)).  As discussed above, Plaintiff has created a fact issue as to whether Gray's actions were objectively reasonable, specifically whether Gray intended to slam the trunk on Plaintiff's thumb.

### c)  Conspiracy Claim

As discussed above, Plaintiff has not alleged sufficient facts, or provide anything other than conclusory allegations, to support his conspiracy claim regarding Gray and the EMS medics.

### III.    CONCLUSION

For these reasons, Defendant EMS's Motion for Summary Judgment is **GRANTED**.  Defendant Gray's Motion for Summary Judgment is **GRANTED** as to Plaintiff's ADA claims

and his § 1983 claim based on denial of medical treatment and conspiracy.  Gray's Motion is

**DENIED** as to Plaintiff's § 1983 claim based on excessive force.


       **IT IS SO ORDERED**.

       **SIGNED** at Houston, Texas, on this the _17th_ day of August, 2009.


                          KEITH P. ELLISON
                          UNITED STATES DISTRICT JUDGE


      **TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**